Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of CHARLES KRONBERGER, Respondent, for Compensation under the Workmen's Compensation Law, *v.* HARLEM BOTTLE COMPANY, Employer, and NEW AMSTERDAM CASUALTY COMPANY, Insurance Carrier, Appellants.

*Workmen's Compensation Law — junk dealer — storing bottles — hazardous employment.*

Appeal from an award of the State Industrial Commission, made on the 13th day of March, 1917.

Award reversed and claim dismissed, on the authority of *Roberto* v. *Schmadeke, Inc.* (180 App. Div. 143), and *Walsh* v. *Woolworth Co.* (Id. 120), decided herewith. All concurred, except Kellogg, P. J., dissenting, with memorandum.

KELLOGG, P. J. (dissenting): In *Matter of Mihm* v. *Hussey* (169 App. Div. 743) we held by a divided court that a wholesale produce dealer who stored his produce, until sold, in a building kept for such storage, was not engaged in warehousing or storage within group 29 of section 2 of the Workmen's Compensation Law. Immediately following that decision that group was amended by adding after the word " storage " the words " of all kinds and storage for hire."* The amendment, we infer from the state-

---

* Consol. Laws, chap. 67 (Laws of 1914, chap. 41), § 2, group 29, as amd. by Laws of 1916, chap. 622.— [REP.

ment of the Commission, was procured by it to meet the *Mihm* case. Here the employer's business was keeping men upon the city dumps, picking bottles from the junk and refuse there, taking them to its warehouse, washing, steaming and sorting them according to kind, and keeping them until sold. It also bought new bottles and bottles from second-hand dealers and junk dealers, wherever offered, by the carload lots, wagon load or by barrels and otherwise. It occupied a building about thirty feet by eighty, in part of which was an office and the remainder was used for storing the bottles. The secretary of the company well defined its business as follows: " Q. Do you do anything else besides buy bottles? A. Buy them and store them inside and sell them,— that's all we do." The Commission found that the business of the employer was that " of junk dealer in respect to bottles, and storage." Ordinarily, the buying of second-hand bottles is not in itself dealing in junk as that word is generally understood, but the men whose business it is to go upon the public dumps of the city of New York, overhauling the junk and refuse there and picking out and removing bottles therefrom, are evidently exposed to the risks and dangers incident to the employment, embraced within group 42. But it is unnecessary to determine whether within this beneficial statute the employer might be held to be a dealer in junk with respect to bottles, as found by the Commission, as we conclude he was engaged in storage of some kind within the meaning of group 29. The group should have a liberal construction so as to bring within it, so far as reasonably may be, the employees who are exposed to the risks and dangers ordinarily incident to the business embraced within it. In *Wilmott* v. *Paton* (4 W. C. C. 65) it was said: " I think that, upon the admitted facts as stated to us, there was clearly a *prima facie* case that these premises were a ' warehouse.' The premises were used for the business of breaking up old iron for sale, and very large quantities of old iron were kept stored in large covered sheds upon the premises." And in *Green* v. *Britten* (6 W. C. C. 82), upon the same subject, the court says: " Nor can it be limited so as to apply only to a building where the public can send their goods to be stored for them, as in the case of the large furniture repositories. The word is applicable to a building used by the owner for the storage of his own goods, though it has no connection of any sort with water transit. * * * ' While it may be difficult to define " warehouse," I am of opinion that, as used in the Act of 1897,* it involves the idea of a place normally of considerable size, mainly used for the storage of goods in bulk or in large quantities, and in which consequently the dangers incident to the handling of goods in bulk or in large quantities might naturally arise.' " In *Armour & Company* v. *Industrial Board of Illinois* (275 Ill. 328; 114 N. E. Rep. 173) the company, in its building, stored its produce for sale to dealers in Danville and vicinity; fresh meats were kept usually no longer than a week, and smoked meats from one to three weeks. It was held to be within the act† providing

---

* See 60 & 61 Vict. chap. 37, § 7.— [REP.

† See Ill. Laws of 1913, p. 339, § 3. See, also, Hurd's Revised Statutes (1915–1916), pp. 1273, 1274, § 128.— [REP.

for " the operation of any warehouse or general or terminal store houses."
The workmen in such employment are subject to all the hazards and risks
attending an employment in a regular storage or warehouse.   Their place
of employment is in and about the warehouse and in connection with the
storing of the merchandise, differing entirely from the employee in the
ordinary store which keeps a quantity of merchandise in stock to sell to
its regular trade.   The employees of the store are salesmen who handle
the goods as salesmen.   Here the employees' duties are to collect the
second-hand bottles, and to place them in the storage and hold them
there.   We are construing a statute intended for the benefit of the employee
and to charge upon the hazardous employment the risks flowing from it.
It places the loss from industrial accidents in hazardous employments upon
the ultimate consumer and not upon the injured employee.   The pre-
sumptions of the statute are all with the claimant whose claim is presumed
to be within the act.   It is not always the question what his business is
called, or whether technically he is within the strict letter of the group.
The question is — is his employer engaged in a business within the fair
spirit of the group?   Is his employer using or employing him in the regular
performance of his duties, where he is subject to the risks and dangers
intended to be covered by the group?   Is he fairly within the legislative
intent?   In this case the employer was fairly engaged in the business of
collecting and storing second-hand and other bottles.   The storage was
of course with the expectation of making a contract of sale at a proper
time.   I think the Commission was justified in determining, as a matter
of fact, that the employer was engaged in a hazardous business and that
the employee is entitled to the benefits of the act.   I, therefore, favor
an affirmance.